## PRINCETON COAL MINING COMPANY *v.* HOWELL.

[No. 6,966.    Filed June 24, 1910.    Rehearing denied October 25, 1910.    Transfer denied December 14, 1910.]

1. MASTER AND SERVANT.—*Coal Mines.—Roof unsafely Propped.— Complaint.*—A complaint alleging that defendant operated a coal mine, employing 100 men, that a large loose stone in the roof of the main entry was negligently propped by weak and defective timbers, that defendant knew thereof, that as the plaintiff was hauling coal out of such entry, such stone so negligently maintained, fell and injured him, to his damage, states a cause of action. *Zeller, McClellan & Co.* v. *Vinardi*, 42 Ind. App. 232, limited.  p. 573.

2. PLEADING.—*Facts of Which Judicial Notice is Taken.—Evidence.*—It is not necessary to allege in the complaint facts of which the courts take judicial notice.  p. 574.

3. EVIDENCE.—*Judicial Notice.—Coal.—Strata.*—Courts take judicial notice of the different coal strata in each county.  p. 574.

4. EVIDENCE.—*Judicial Notice.—Coal Mines.—Loose Rock.—Securing or Taking Down.*—Courts judicially know that a loose rock seven and one-half feet long, three feet wide and eighteen inches thick, in the roof of the entry to a coal mine, can be "carefully secured or taken down."  p. 574.

5. MASTER AND SERVANT.—*Coal Mines.—Loose Rock.—Practicability of Removal Without Interference.*—In an action against a coal company for injuries sustained by the falling of a loose rock from the ceiling of the main entry to the mine, it is not necessary to allege that it was practicable to secure, or remove, such stone "without undue interference with the working of the mine," the statute (§8580 Burns 1908, Acts 1905, p. 65, §12), requiring such stone to be secured or taken down, being mandatory.  p. 575.

6. MASTER AND SERVANT.—*Coal Mines.—Duties of Boss.—Statutes.* —Under §8580 Burns 1908, Acts 1905 p. 65, §12, it is made the imperative duty of the mine boss in a coal mine to see that all loose slate, coal and rock overhead shall be taken down or carefully secured, and not to allow any one to enter except for the purpose of making the place safe.  p. 575.

7. MASTER AND SERVANT.—*Assumption of Risk.—Coal Mines.—Failure to Prop.*—A servant who enters a main entry in a coal mine, a loose rock in the ceiling of which was negligently propped, does not assume the risk of the dangers thereof, the statute (§8580 Burns 1908, Acts 1905, p. 65, §12), requiring the mine boss to secure, or take down, loose stone.  p. 575.

8. MASTER AND SERVANT.—*Coal Mine.—Negligence.—Witnesses.— Mine Boss.—Qualifications.—Evidence.—Convictions.—Credibility.*

—In an action against the operator of a coal mine for damages caused by the negligence of the mine boss, and such boss qualifies and testifies as an expert, the plaintiff, as affecting his qualifications and his credibility, may, on cross-examination, show that he had formerly been convicted for neglect of duties as a mine boss. p. 576.

From Superior Court of Vanderburgh County; *Alexander Gilchrist*, Judge.

Action by Thomas Howell against the Princeton Coal Mining Company. From a judgment on a verdict for plaintiff for $5,000, defendant appeals. *Affirmed.*

*Embree & Embree* and *DeBruler, Welman & DeBruler*, for appellant.

*J. M. & S. L. Vandeveer* and *Funkhouser & Funkhouser*, for appellee.

Roby, J.—Appellee's complaint is in two paragraphs. Its sufficiency was challenged by demurrer for want of facts, and the ruling of the court thereon is assigned

1. as error. The substance of the pleading is that appellee was, on July 27, 1907, in the employ of appellant. Appellant then owned and operated a coal mine, employing therein about one hundred men. Appellee, who was a driver hauling coal therein, was injured by the falling of a large stone from the roof of the main entry. The timbers which upheld the roof at said place were broken, weak and insufficient to sustain the weight of said roof and rock. Appellant, with full knowledge of said defective and dangerous condition, suffered it to be and remain in said dangerous condition, and for more than ten days prior to said day knew that the slate was liable to fall and injure its employes who were required to pass along said entry. It had in its service a mine boss, who on said day knew, and for more than ten days had known, that said entry was unsafe and dangerous, and who had been notified thereof for more than ten days, and failed and omitted to cause said dangerous place to be placed in a safe condition, and

unlawfully permitted the employes in said mine to pass under said slate and rock in the discharge of their respective duties. Other averments are not essential to the consideration of the points made. The objection to the pleading is that it does not contain an averment that the defect complained of could be remedied.

The case of *Zeller, McClellan & Co.* v. *Vinardi* (1908), 42 Ind. App. 232, is relied upon to sustain this contention. The complaint in that case was held bad, for the reason that it did not contain an averment that ten or more men were employed in the mine where the accident occurred. This being true, the coal mine act was not involved in the case, and all that was said upon that subject was dictum.

This court cannot invoke the law governing mines in which ten or more men are employed in deciding a coal mine case to which the statute does not apply.

If the views of the writer of the opinion in the case of *Zeller, McClellan & Co.* v. *Vinardi, supra,* were adopted, it could not render this complaint insufficient. The averments show that the negligence complained of consisted of a failure to replace broken and insufficient timbers.

2. It needs no averment to show that a structure once made can be repaired. The courts take notice of matters of common knowledge, and matters of which judicial notice is taken need not be averred.

3. Judicial notice is taken of the different geological strata of coal in each county, and of many other facts connected with coal mines and their operation. *State* v. *Barrett* (1909), 172 Ind. 169.

4. This court knows without being told that a detached stone seven and one-half feet long, three feet wide and eighteen inches thick, situated in the roof of an entry to a coal mine, can be "carefully secured or taken down." To hold otherwise would be to ignore the law of gravitation.

Appellant's argument on this claim is that the averment should be that of practicability "without undue interference with the working of the mine." This would be to abrogate the law, and substitute therefor the notion of the mine boss or operator as to what is "undue interference" with the operation of the mine, the very subject upon which the legislature was convinced they could not be trusted. The measure of the owner's duty is prescribed. He must make the dangerous place safe and exclude his employes therefrom, until it is safe, excepting only those who are engaged in doing the work.

The negligence charged is two fold: (1) In failing to discharge the common law duty to make the place safe, and (2) the violation of the mandatory provisions of section twelve of the act of 1905. (Acts 1905 p. 65, §8580 Burns 1908). By this act the duty is imposed upon the mine boss to see that all loose slate, coal and rock overhead in mines where employes have to travel to and from work shall be taken down or carefully secured, and until the place is made safe no person shall enter such unsafe place, except for the purpose of making it safe. This prohibition is general in terms, but the subsequent provision, that the mine boss shall give permission for the men to return to work therein after the repairs are completed, shows an intention to devolve upon him power in that regard, and there is no doubt of his authority and duty to exclude employes from the unsafe place.

It is contended that the doctrine of assumed risk is applicable to an employe injured by reason of noncompliance with the terms of this act by the mine boss. The point made is that the act enjoins no specific thing upon the mine boss, but leaves him free to exercise his judgment as to whether the loose coal should be taken down or secured. We are not able to concur in this view. The statute is explicit and mandatory. Take down or se-

cure, and the alternative expression, does not create any uncertainty. The factory act requires that certain saws be guarded. The selection of the guard, its form and construction, are left to the discretion of the owner, but the doctrine of assumed risk does not apply in the case at bar. *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 58 L. R. A. 944; *Green* v. *American Car, etc., Co.* (1904), 163 Ind. 135; *American Car, etc., Co.* v. *Clark* (1904), 32 Ind. App. 644.

The mine boss was a witness. On cross-examination he was asked and, over objection, testified that he had been three times tried, convicted and fined before a justice of the peace for neglecting his duties as mine boss.

It was not, as appellant asserts, competent to establish negligence in a particular instance by proof of negligence in a different instance, nor was it competent to establish a violation of the law in one instance by proof of other violations of law, but the evidence was not admitted for that purpose. Appellant had interrogated the witness concerning his experience which entitled him to testify as an expert upon the subjects involved. It was competent for the appellee, on cross-examination, to develop facts tending to rebut the conclusion of expert competency, and there was no error in permitting him to do so. It was also competent evidence within the discretion of the trial court, as affecting the credibility of the witness. *Parker* v. *State* (1894), 136 Ind. 284; *Bessette* v. *State* (1885), 101 Ind. 85; *City of South Bend* v. *Hardy* (1884), 98 Ind. 577, 49 Am. Rep. 792.

The duty imposed upon a mine boss by the statute is important and responsible. It has to do not only with human life, but with human lives; the lives of those who are, in a large degree, helpless, except as care is taken of them, and it cannot justly be held that the violations of the provisions of that law to that end are necessarily free from moral turpitude.

The jury was instructed at considerable length and with particularity. The learned counsel for appellant did not, so far as the record discloses, omit anything. The instructions refused by the court were embodied in others given. The assumptions contained in some of the instructions were of facts established without conflict, and the instructions, as a whole, correctly put the case before the jury. There is evidence supportive of all material facts involved, and the judgment is therefore affirmed.